UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DÉJEAN PIERCE | CIVIL ACTION |
| VERSUS | NO. 11-2893 |
| MARLON GUSMAN, DEPUTY LEE | UNITED STATES MAGISTRATE JUDGE KAREN WELLS ROBY |

## ORDER AND REASONS

Before the Court is the **Motion for Partial Summary Judgment (Rec. Doc. No. 15)** filed by the defendants, Orleans Parish Sheriff Marlin N. Gusman and Deputy Lee, who seek dismissal of the plaintiff's claims against Sheriff Gusman. The matter is before the court on consent of the parties pursuant to 28 U.S.C. § 636(c).[1]

### I. Factual Background

#### A. The Complaint

The plaintiff, DéJean Pierce ("Pierce"), is an inmate currently incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2] While he was previously housed in the Orleans Parish Prison ("OPP"), he filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983

---

[1] Rec. Doc. Nos. 14.

[2] Rec. Doc. No. 8.

against Sheriff Gusman and Deputy Lee seeking redress for the alleged denial of his constitutional rights.

Pierce alleged that on November 20, 2010, while housed on Tier C-2 of OPP, he was attacked by seven inmates, all of whom were armed with knives. He received 20 stab wounds which caused multiple lacerations mostly to his back and both of his lungs to collapse. An MRI and CT scan showed that he suffered extensive cranial and facial nerve damage and damage to his eyeball as well.

Pierce contends that the incident would not have occurred but for the fact that Deputy Lee left his post after observing escalating tension during meal time. He claims that Deputy Lee withdrew from his post, and by the time he returned, Pierce was in need of serious medical attention due to blood loss and inability to breathe. Pierce further states that he was taken to the emergency room and was not discharged until November 24, 2010.

Pierce request compensation in the amount of $10,000,000.00 for diminished capacity and quality of life as a result of the negligence of the OPP administration. He also requests that there be federal oversight of the daily administration of the prison and removal of indifferent and unprofessional policies exercised by the OPP staff.

**B.     The *Spears* Hearing**

On January 5, 2012, the Court conducted a hearing pursuant to *Spears v. McCotter*,[3] and its progeny, with the plaintiff and counsel for the defendants participating by conference telephone

---

[3] 766 F.2d 179 (5th Cir. 1985). The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges to have occurred and the legal basis for the claims. The information elicited at the hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). *Wilson v. Barientos*, 926 F.2d 480, 482-83 (5th Cir. 1991).

2

call.[4] During the hearing, Pierce testified that he was almost 23 years old, and had just been found guilty of one count of second degree murder and one count of attempted second degree murder, for which he received a life sentence plus 50 years in prison.

At the time of the events at issue, he was still a pretrial detainee. He could only recall that Deputy Lee's first initial was "M." On the day in question, he was housed on OPP Tier C-2 right side. He had only been on that tier for four days after his release from disciplinary confinement. He had been there for about 30 or 40 days after a knife was found in his cell and all four cellmates were sent to disciplinary. As the inmates were being served lunch, he got into a fist fight with another inmate. He could not recall what they fought over. While they were fighting, five to seven other inmates joined in the fight, several of whom had homemade knives. He did not know the names of any of the attackers. During the attack, he saw at least two inmates swinging knives, but he was not aware of how many times he had been stabbed until he was taken to the hospital. When he broke free from the attackers, he made his way to the tier door, where Deputy Lee opened the gate to let him out. He was met by a ranking officer named Washington and escorted to the medical unit.

Pierce stated that he does not know where Deputy Lee was during the fight. He assumed that he was not watching because he would have said something or come in to stop the fight, which lasted only a few minutes.

At the medical unit, his wounds were monitored and he was put on a breathing machine. He was sent by ambulance to University Hospital where he remained until November 24, 2010. Upon

---

[4] Rec. Doc. No. 9. The plaintiff was sworn prior to testifying. The hearing was digitally recorded.

his return, he remained on the prison's medical tier. Overall, he received 20 or more stab wounds, two collapsed lungs, and a black eye.

Pierce indicates that he named Sheriff Gusman as a defendant because he was attacked in the jail. He conceded that the Sheriff could not have known about the fight. He also stated that he had no knowledge of any wrongful policy at the prison; his real challenge was that Deputy Lee was supposed to follow the policy of watching him to keep him safe. He acknowledged that the response to his administrative grievance indicated that Deputy Lee was at his post when the fight broke out. He nevertheless complained that Deputy Lee did not stop the attack.

As relief, Pierce reiterated his request for monetary compensation and to have the policies improved to assure that deputies are where they are supposed to be to prevent this type of attack from happening again.

## II. The Defendants' Motion

The defendants move for summary judgment on the issue of Sheriff Gusman's liability. Specifically, they argue that plaintiff has not alleged Sheriff Gusman was personally involved in the events leading to his injuries. As such, under § 1983, the Sheriff can not be held vicariously liable for the acts of his subordinates. Pierce has not responded to the defendants' motion.

## III. Standard of Review

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Lindquist v. City of Pasadena, Tex.*, 669 F.3d 225, 232-33 & n.9 (5th Cir. 2012) (*quoting Travelers Lloyds Ins. Co. v. Pac. Emp'rs Ins. Co.*, 602 F.3d 677, 681 (5th

Cir. 2010)). The Court's task is not to resolve disputed issues of fact, but to determine whether there exists any factual issues to be tried. *See Andersen v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986); *Lindquist*, 669 F.3d at 233 & n.11 (quoting *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008)). In making this determination, all of the facts must be viewed in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 248; *Lindquist*, 669 F.3d at 233 & n.12 (citing *Frakes v. Crete Carrier Corp.*, 579 F.3d 426, 429-30 (5th Cir. 2009)).

The moving party bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the moving party carries its burden of proving that there is no material factual dispute, the burden shifts to the nonmovant to show that summary judgment should not lie. *Hopper v. Frank*, 16 F.3d 92, 96 (5th Cir. 1994). While the court must consider the evidence with all reasonable inferences in the light most favorable to the nonmovant, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). This requires the nonmoving party to do "more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586-87

Instead, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue of fact for trial." *Celotex Corp*, 477 U.S. at 324. If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *See Szabo v. Errisson*, 68 F.3d 940, 942 (5th Cir. 1995), *abrogated on other*

*grounds by Reed Elsevier, Inc. v. Muchnick*, 130 S.Ct. 1237 (2010); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1084 (5th Cir. 1994).

**IV.    Analysis**

The defendants move for summary judgment on the issue of Sheriff Gusman's liability under § 1983. As argued by defendants, a supervisory official, like Sheriff Gusman, cannot be held liable pursuant to § 1983 under any theory of *respondeat superior* simply because an employee or subordinate at the prison allegedly violated the plaintiff's constitutional rights. *See Alton v. Tex. A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999); *see also Baskin v. Parker*, 602 F.2d 1205, 1220 (5th Cir. 1979).

Instead, the Sheriff may only be liable under § 1983 if he "was personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation." *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998) (citing, e.g., *Sims v. Adams*, 537 F.2d 829, 831-32 (5th Cir. 1976)); *see also Watson v. Interstate Fire & Cas. Co.*, 611 F.2d 120, 123 (5th Cir. 1980). This personal involvement also must include a showing of deliberate indifference as set forth above.

While the defendants' motion is sparse at best, the record taken as a whole supports the defendants' contentions and leaves no genuine issue for trial regarding Sheriff Gusman's liability. Pierce named Sheriff Gusman in his complaint and offered no factual support for doing so. Upon questioning during the *Spears* Hearing, Pierce conceded that Sheriff Gusman had no personal knowledge of the fight or involvement in the events that day.

He also indicated that he had no issue with the policies in place at the prison, only Deputy Lee's failure to comply with the policies which would have required him to be at his post and protect him. Thus, he has not alleged that he has suffered any injury as a result of any directive, supervised training or activity, or other policy set forth by the Sheriff which would create vicarious liability. *See Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 1991); *Johnson v. Moore*, 958 F.2d 92, 93-94 (5th Cir. 1992); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25 (1988); *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996).

For these reasons, Pierce has not presented any basis for the Sheriff's liability under § 1983. As a matter of law, the claims against Sheriff Gusman will be dismissed.

## V.  Conclusion

Accordingly,

**IT IS ORDERED** that the **Motion for Partial Summary Judgment (Rec. Doc. No. 15)** filed by Orleans Parish Sheriff Marlin N. Gusman and Deputy Lee is **GRANTED** and the claims against Sheriff Gusman are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this 12th day of October, 2012.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**